UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN JAMES SPEARS, | ) | CIVIL ACTION NO. 4:20-CV-1817 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

## I.      INTRODUCTION

Plaintiff John James Spears, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision

will be VACATED, and this case REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

II.    BACKGROUND & PROCEDURAL HISTORY

On March 20, 2018, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 15).  In these applications, Plaintiff alleged he became disabled as of July 1, 2017, when he was forty-four years old, due to the following conditions: back problem; blindness; obesity; high blood pressure; hand/wrist/arm problem; shoulder problem; heart problem; and anxiety problem. (Admin. Tr. 175). Plaintiff later amended his alleged onset date to March 20, 2018, when he was forty-five years old. *Id.* Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, complete tasks, concentrate, and get along with others. (Admin. Tr. 221). Plaintiff has at least a high school education. (Admin. Tr. 25). Before the onset of his impairments, Plaintiff worked as a truck driver and dock worker. (Admin. Tr. 25).

On August 28, 2018, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 15). On September 5, 2018, Plaintiff requested an administrative hearing. *Id*.

On May 14, 2019, Plaintiff, assisted by his counsel, appeared, and testified during a hearing before Administrative Law Judge Paula Garrety (the "ALJ"). (Admin. Tr. 15, 27). On July 11, 2019, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 27). On July 11, 2019, Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 118).

On August 3, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1).

On October 5, 2020, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law and regulations. (Doc. 1, ¶¶ 6-8). As relief, Plaintiff requests that the Court award benefits, or in the alternative remand this matter for a new administrative hearing. (Doc. 1).

On April 12, 2021, the Commissioner filed an Answer. (Doc. 13). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 13, ¶ 8). Along with her

Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 14).

Plaintiff's Brief (Doc. 17), the Commissioner's Brief (Doc. 20), and Plaintiff's Reply (Doc. 21) have been filed. A telephone discussion with counsel was held on December 21, 2021. This matter is now ripe for decision.

III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

A. SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single

piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope

of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

      B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[1] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement

---

[1] Throughout this Report, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on July 11, 2019.

age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which

evidence he has rejected and which he is relying on as the basis for his finding."

*Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

Having reviewed the applicable legal standards, I now turn to the merits of Plaintiff's claims.

## IV. DISCUSSION

Plaintiff raises the following issues in his statement of errors:

1. The ALJ's consideration of Plaintiff's mental impairments is improper and unsupported by substantial evidence as she failed to provide adequate rationalization for finding them non-severe and for finding Dr. Santarelli's opinion not persuasive.

2. The ALJ's RFC determination is unsupported by substantial evidence as she failed to properly evaluate the opinions of CE Dr. Kneifati and Plaintiff's treating provider Dr. Greco.

(Doc. 17, p. 9).

### A. THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In her July 2019 decision, the ALJ found that Plaintiff will meet the insured status requirement of Title II of the Social Security Act through December 31, 2022. (Admin. Tr. 17). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between March 20, 2018 (Plaintiff's amended alleged onset

date) and July 11, 2019 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 17).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine; vision impairment/blindness in the right eye; migraines; obesity; and shoulder impairment. (Admin. Tr. 17). The ALJ also found that the following impairments were medically determinable but non-severe: anxiety; and obsessive-compulsive disorder. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 19).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light "unskilled" work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except that:

> the claimant could lift and carry up to twenty pounds. He could stand and walk for up to four hours, and could sit for up to six hours. The claimant would be limited to jobs that do not require more than occasional postural changes, such as bending, stooping, crouching, etc. He should avoid overhead reaching. He should have no exposure to vibrations, heights or hazards. The claimant must avoid work requiring

binocular vision (such as depth perception). He would be limited to work performed in a temperate environment.

(Admin. Tr. 20).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 25). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 25-26). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: Office Helper, DOT #239.567-010; Ticket Sales, DOT # 211.467-030; and Information Clerk, DOT #237.367-018. (Admin. Tr. 26).

B.   WHETHER THE ALJ PROPERLY EVALUATED THE MEDICAL OPINIONS ABOUT PLAINTIFF'S PHYSICAL IMPAIRMENTS

Three medical sources offered opinions about Plaintiff's physical limitations: Dr. Kneifati (a consultative examiner who specializes in internal medicine); Dr. Bermudez (a state agency medical consultant specializing in radiology); and Dr. Greco (Plaintiff's primary care physician).

On August 3, 2018, consultative examiner Ahmed Kneifati, M.D. examined Plaintiff and took x-rays of Plaintiff's lumbar spine. Based on that examination, Dr. Kneifati assessed that Plaintiff could: continuously lift or carry up to ten pounds;

occasionally lift or carry up to twenty pounds; sit up to two hours at a time and for a total of five hours per eight-hour workday; stand up to two hours at a time and for a total of four hours per eight-hour workday; and walk up to twenty minutes at one time for a total of three hours per eight-hour workday; continuously feel; frequently reach (in all directions except overhead), handle, finger, operate foot controls, climb stairs, stoop, kneel, crouch, and crawl; and occasionally reach overhead, push or pull with his upper extremities, climb ladders, and balance. (Admin. Tr. 369-374; Doc. 14-9, pp. 44-49). Dr. Kneifati assessed that Plaintiff could not read very small print, and could tolerate only occasional exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity, extreme cold, and extreme heat. *Id.* He also reported that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces. *Id.*

The ALJ found that Dr. Kneifati's opinion was "somewhat persuasive." In doing so, the ALJ explained:

> The undersigned finds this opinion is somewhat persuasive, as it is partially consistent with and supported by the objective medical evidence, including the claimant's conservative treatment history and diagnostic test results and measurable findings on clinical examinations. The undersigned accepts this opinion to the extent it reflects the claimant is capable of performing a range of light exertional work, as noted above. This portion of Dr. Kneifati's opinion as to the claimant's ability to sit, stand, and walk, including walking on uneven terrain, is an underestimate of the claimant's ability in these areas, and is not consistent with or supported by his findings that the claimant

walks without an assistive device, and retained full strength, sensation, and range of motion over his bilateral lower extremities without edema. His opinion that the claimant would be unable to read small print is also not consistent with or supported by the claimant's own testimony that he uses his cell phone to play games and check sports scores (Hearing Testimony).

(Admin. Tr. 23; Doc. 14-2, p. 24).

On August 24, 2018, state agency medical consultant Minda Bermudez, M.D. ("Dr. Bermudez") reviewed the available records, including Dr. Kneifati's opinion, and assessed that Plaintiff could: occasionally lift or carry up to twenty pounds; frequently lift or carry up to ten pounds; stand and/or walk (with normal breaks) up to four hours; sit (with normal breaks) up to six hours; push or pull without limitation; occasionally climb ramps, climb stairs, climb ladders, climb ropes, climb scaffolds, balance, stoop, kneel, crouch, and crawl. Dr. Bermudez assessed that Plaintiff was limited in overhead reaching, far acuity (in right eye), and depth perception (right eye), and should avoid concentrated exposure to vibration and hazards. (Admin. Tr. 66-68; Doc. 14-3, pp. 9-11). Dr. Bermudez's opinion is very similar to Dr. Kneifati's assessment. The primary difference being the amount of time Plaintiff could be expected to sit (six versus five hours), and walk (four hours versus three hours).

In her decision, the ALJ found Dr. Bermudez's opinion "persuasive." In doing so the ALJ explained:

Page 13 of 21

The undersigned finds this opinion is persuasive, as it is generally consistent with and supported by the objective medical evidence, including the claimant's conservative treatment history and diagnostic test results and measurable findings on clinical examinations. This opinion is also consistent with and supported by the findings from objective physical examinations, including the findings that the claimant had some tenderness over his lumbar spine, with positive straight leg raise on the left, but otherwise retained full strength and sensation over his extremities, and had no focal or neurological deficits, as described in more detail above.

(Admin. Tr. 22; Doc. 14-2, p. 23).

On February 28, 2019, primary care physician Jeffrey Greco ("Dr. Greco") completed a check box medical source statement. (Admin. Tr. 476-477; Doc. 14-11, pp. 13-14). In that medical source statement, Dr. Greco assessed that Plaintiff could: sit up to three hours per eight hour workday; "stand/walk" up to three hours per eight-hour workday; frequently lift or carry less than ten pounds; occasionally lift or carry up to twenty pounds; could reach with his arms 50% of each workday; use his fingers for fine manipulation 80% of the day on his right and 20% of the day on his left; and use his hands to grasp, turn and twist objects up to 60% of the day on his right and 20% of the day on his left. *Id.* Dr. Greco also assessed that Plaintiff would need a 30 minute unscheduled break once every 90 minutes, and would be absent from work due to his impairments more than four times per month. *Id.*

In her decision, the ALJ found that Dr. Greco's opinion was "not persuasive." In doing so, the ALJ explained:

The undersigned opinion is not persuasive, as it is not consistent with or supported by the objective evidence, including the findings that the claimant had some tenderness over his lumbar spine, with positive straight leg raise on the left, but otherwise retained full strength and sensation over his extremities, and had no focal or neurological deficits, as described in more detail above. Although the undersigned has accommodated some reaching limitations in the above residual functional capacity, the record does not contain any objective examination findings that would support the severity of the upper extremity limitations included in this opinion. In addition, the record, including the findings noted above, does not support the opinion that the claimant would require such significant unscheduled breaks or would be absent four or more times per month. Of particular note in this regard is the opinion of claimant's treating orthopedic doctor, Matthew Eager, MD, who indicated on April 11, 2019, that he does not "have any conclusive reason to have [claimant] on any specific restriction" (Exhibit 20F/3).

(Admin. Tr. 24).

The Commissioner's regulations define a medical opinion as "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she has] one or more impairment-related limitations or restrictions in the following abilities:"

(i)    [The] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii)    [The] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding

appropriately to supervision, co-workers, or work pressures in a work setting;

(iii)   [The] ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv)   [The] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2); 20 C.F.R. § 416.913(a)(2). A "medical source" is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State of Federal Law, or an individual who is certified by a States as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law. 20 C.F.R. § 404.1502(d); 20 C.F.R. § 416.902(d). If one medical source submits multiple medical opinions, and ALJ will articulate how he or she considered the medical opinions from that medical source in a single analysis. 20 C.F.R. § 404.1520c(b)(1); 20 C.F.R. § 416.920c(b)(1).

An ALJ's consideration of competing medical opinions is guided by the following factors: the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is consistent with the record as a whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of

examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c); 20 C.F.R. § 416.920c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2). The ALJ will explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. The ALJ may, but is not required to, explain his or her consideration of the other factors <u>unless there are two equally persuasive medical opinions about the same issue that are not exactly the same</u>. 20 C.F.R. § 404.1520c(b)(3); 20 C.F.R. § 416.920c(b)(3). Unlike prior regulations, under the current regulatory scheme, when considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a); 20 C.F.R. § 416.920c(a).

Plaintiff argues that the ALJ should have credited Dr. Kneifati's opinion about Plaintiff's ability to sit, stand and walk, instead of crediting Dr. Bermudez's assessment. As summarized above, the differences between these two opinions are

slight. Dr. Kneifati assessed that Plaintiff could <u>sit for five hours</u> per eight hour day, while Dr. Bermudez assessed that Plaintiff could <u>sit for six hours</u> per eight hour day. Dr. Kneifati and Dr. Bermudez both assessed that Plaintiff could <u>stand for four hours</u> per eight hour day. Dr. Kneifati assessed that Plaintiff could <u>walk up to three hours</u> per eight hour day, while Dr. Bermudez assessed that Plaintiff could <u>walk up to four hours</u> per eight hour day. Thus, Dr. Kneifati assessed that Plaintiff could sit for one hour less, and stand for one hour less than is set forth in the RFC assessment.

Plaintiff generally argues that the ALJ failed to adequately explain why Dr. Bermudez's opinion as to sitting and walking was credited and Dr. Kneifati's opinion was rejected. I find that this argument has considerable merit.

As noted by both Plaintiff and the Commissioner in their briefs, the evaluation of the medical opinion evidence in this case is governed by relatively new regulations that become effective on March 27, 2017. *See* 20 C.F.R. § 404.1520c; 20 C.F.R. § 416.920c. Under these regulations, if two opinions are not exactly the same, but are equally consistent and supported by the record, an ALJ is required to consider additional factors related the sources' treatment relationship with the claimant, examining relationship with the claimant, and specialization. In this case, the ALJ suggests that objective evidence that the <u>one hour difference</u> in total walking and sitting assessed by Dr. Kneifati *is not* supported by and consistent with evidence

that Plaintiff "walked without an assistive device, and retained full strength, sensation, and range of motion over his bilateral lower extremities without edema, (Admin. Tr. 23), while Dr. Bermudez's opinion *is* supported by and consistent with the same evidence (*see* Admin. Tr. 22) (finding Dr. Bermudez's opinion "consistent with and supported by the objective medical evidence, including the claimant's conservative treatment history, diagnostic test results and measurable findings on clinical examinations. This opinion is also consistent with and supported by the findings from objective physical examinations, including the findings that the claimant had some tenderness over his lumbar spine, with positive straight leg raise on the left, but otherwise retained full strength and sensation over his extremities, and had no focal neurological deficits . . . .).

I find that the ALJ's assessment that Dr. Bermudez's opinion is more consistent and more supported than Dr. Kneifati's opinion is not adequately explained. After reviewing the evidence cited, it is not apparent why this evidence is more supportive of or consistent with one opinion over the other. Thus, I cannot find that the ALJ's rationale is supported by substantial evidence, and I cannot determine whether the ALJ satisfied the articulation requirements in 20 C.F.R. § 404.1450c(b)(3) (requiring ALJ's to articulate consideration of additional factors

where two opinions that differ in substance are equally consistent with and supported by the record); 20 C.F.R. § 416.920c(b)(3) (same).

Moreover, there is not any evidence in the record that addresses whether additional erosion of Plaintiff's ability to stand or walk would impact the ALJ's conclusion that Plaintiff could engage in light work. Therefore, there is a reasonable possibility that this error could have affected the outcome in this case.

## C.   PLAINTIFF'S REMAINING ARGUMENTS

Because I have found a clear basis for remand based on the ALJ's failure to properly explain or support his decision to credit the sitting and walking limitations assessed by Dr. Bermudez and discount the sitting and walking limitations assessed by Dr. Kneifati, I need not address these remaining arguments. To the extent any further error exists, it may be addressed on remand.

[The next page contains the conclusion]

V.     CONCLUSION

Plaintiff's request for relief will be GRANTED as follows:

(1)     The final decision of the Commissioner will be VACATED.

(2)     This case will be REMANDED to the Commissioner to conduct a new
        administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3)     Final judgment will be issued in favor of John James Spears.

(4)     An appropriate order will be issued.

Date: March 7, 2022                      BY THE COURT

                                         *s/William I. Arbuckle*
                                         William I. Arbuckle
                                         U.S. Magistrate Judge